UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SCOTT J. MCGREGOR,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY ,

                Defendant.

**REPORT AND
RECOMMENDATION**

10-CV-1483
(TJM/VEB)

---

## I. INTRODUCTION

In January of 2008, Plaintiff Scott J. McGregor applied for disability and disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that he had been unable to work since September of 2007 due to physical and mental impairments.  The Commissioner of Social Security denied Plaintiff's application.

Plaintiff commenced this action by and through his attorneys, Conboy McKay Bachman & Kendall, Lawrence D. Hasseler, Esq., of counsel, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on January 22, 2008, alleging disability beginning on September 11, 2007. (T at 127-36, 164).[1]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York on November 20, 2009, before ALJ John P. Ramos.  (T at 33.  Plaintiff, accompanied by his attorney, appeared and testified.  (T at 38-63).

 On December 7, 2009, ALJ Ramos issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act between the alleged onset date and the date last insured and was thus not entitled to benefits. (T at 15-27).  The ALJ's decision became the Commissioner's final decision on November 24, 2010, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

Plaintiff, by and through his attorneys, timely commenced this action on December 8, 2010.  (Docket No. 1).  The Commissioner interposed an Answer on March 25, 2011.  (Docket No. 8).  Plaintiff filed a Brief in support of his action on April 27, 2011. (Docket No. 11).  Defendant filed a Brief in opposition on June 24, 2011. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is recommended that the Commissioner's motion be

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

denied, Plaintiff's motion be granted, and this case be remanded for calculation of benefits.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

**1.   Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008.  The ALJ found that Plaintiff did not engage in substantial gainful activity between September 11, 2007, the alleged onset date, and December 31, 2008, the date last insured.  (T at 17).

The ALJ concluded that, as of the date last insured, Plaintiff had the following impairments, which the ALJ considered "severe," as defined under the Social Security Act: chronic obstructive pulmonary disease ("COPD"), substance abuse (in remission), obesity, degenerative disc disease of the lumbar spine, and schizoaffective disorder. (T at 17). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 14).

5

The ALJ concluded that Plaintiff retained the residual functional capacity (as of the date last insured) to lift/carry 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours in an 8-hour day; and stand/walk for 2 hours in an 8-hour day.  The ALJ found that Plaintiff could occasionally stoop, kneel, crouch, and crawl.  The ALJ assessed that Plaintiff could (on a sustained basis, as of the date last insured) understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting. (T at 21).

The ALJ determined that (as of the date last insured) Plaintiff could not perform his past relevant work as a cashier, disc jockey, production director, floor cleaner, taxi driver, and telemarketer. (T at 25).  Considering Plaintiff's age (39 years old on the date last insured), education (high school), work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform as of the date last insured. (T at 26). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from September 11, 2007 (the alleged onset date) through December 31, 2008 (the date last insured). (T at 26).

As noted above, the ALJ's decision became the Commissioner's final decision on November 24, 2010, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

**2.    Plaintiff's Claims**

Plaintiff argues that the Commissioner's decision should be reversed. Plaintiff offers five (5) principal arguments in support of his position.  First, Plaintiff contends that the ALJ

should have concluded that his schizophrenia met the requirements of the impairment set forth at §12.03 of the Listings.  Second, Plaintiff argues that the ALJ did not properly assess the medical evidence.   Third, Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff asserts that the ALJ did not properly apply the special technique when evaluating his mental impairments.   Fifth, Plaintiff contends that the ALJ erred by concluding that jobs existed in significant numbers in the national economy that Plaintiff could perform as of the date last insured. This Court will address each argument in turn.

### a.      § 12.03 of the Listings

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at

530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

Plaintiff contends that his schizophrenia satisfies the paragraph (A) and (B) requirements needed to meet the impairment set forth in Section 12.03 of the Listings (Schizophrenic, paranoid and other psychotic disorders).

Paragraph (A) of the § 12.03 requires: Medically documented persistence, either continuous or intermittent, of one or more of the following: (1) Delusions or hallucinations; (2) Catatonic or other grossly disorganized behavior; (3) Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following: (a) Blunt affect; (b) Flat affect; (c) Inappropriate affect; or (4) Emotional withdrawal and/or isolation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03 (A).

The record established that Plaintiff's impairment satisfied the paragraph (A) requirements.  Specifically, the record documents delusions, including a belief that Plaintiff "absorbs" other people's pain through "psychic feedback," and difficulty distinguishing between reality and fantasy. (T at 227, 400, 508, 515, 523, 591, 612).

Thus, the question of whether Plaintiff's impairment meets § 12.03 of the Listings turns on whether he satisfies the paragraph (B) criteria of that Listing.  Paragraph (B) requires a marked limitation in at least two of the following: (1) activities of daily living, (2) maintaining social functioning, (3) maintaining concentration, persistence or pace, or (4)

8

repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03 (B).

The ALJ determined that Plaintiff's impairment did not satisfy the paragraph (B) criteria.  In particular, the ALJ found that Plaintiff had no limitation with regard to activities of daily living; no more than mild difficulties with respect to social functioning; no more than moderate difficulties as to concentration, persistence, or pace; and no episodes of decompensation. (T at 19-20).  Plaintiff challenges the ALJ's paragraph (B) findings, arguing that he suffers from marked limitations as to all three domains of functioning.[4]

This Court finds that the ALJ's decision was not supported by substantial evidence. The Listings define a "marked" limitation as means "more than moderate but less than extreme." "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C).  For the following reasons, Plaintiff suffers from a marked limitation as to at least two of the domains.

### i.      Activities of Daily Living

Activities of daily living "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C)(1).  The record indicated that Plaintiff engaged in limited activities of daily living, consisting primarily of personal hygiene,

---

[4]Plaintiff does not, however, allege that he has suffered multiple episodes of decompensation. (Docket No. 11, at p. 15).

watching television, and writing. (T at 303, 336, 593).  Plaintiff's wife performed household chores (T at 57-58, 303) and Dr. Shapiro, a consultative examiner, twice opined that could not appropriately manage stress or handle money. (T at 402-403, 593-94).  At the very least, the ALJ should have concluded that Plaintiff had some limitation with regard to activities of daily living and the record does not contain substantial evidence sufficient to support the ALJ's conclusion that Plaintiff had no restriction as to this domain.[5]

### ii.    Social Functioning

"Social functioning" refers to the claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." It includes " the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C)(2).

Dr. Shapiro, a consultative examiner, indicated in April of 2008 that Plaintiff might "have difficulty interacting appropriately with others due to psychiatric symptoms," which included anxiety, agoraphobia, and delusions about "absorbing" the moods of others.  (T at 400, 402).  In November of 2009, Dr. Shapiro found that Plaintiff's insight and judgment were poor (T at 593) and opined that Plaintiff had a marked limitation with respect to interacting appropriately with the public, supervisors, and co-workers. (T at 596).

Medical records described social withdrawal, depression, anxiety, paranoid

---

[5]However, the record suggests that Plaintiff's limitations with regard to this domain might not be marked.  As such, the ALJ's error in assessing no limitations as to this domain might have been harmless, but for the fact that (as discussed further below) the evidence demonstrated marked limitations with respect to the other two domains, namely, social functioning and concentration, persistence, and pace. Listing § 12.03 requires marked limitations in at least two of the domains.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03 (B).  As such, even if Plaintiff's limitations with respect to his activities of daily living were less than marked, his impairment satisfies the Listing because he has marked limitations in the two other domains.

personality disorder, uncontrollable fits of temper, hallucinations, magical thinking, and racing thoughts. (T at 337, 484, 08, 511-12, 515-16, 519). Judith Pirro, a treating social worker, noted that irritability and anger interfered with Plaintiff's social interaction. (T at 337). Bonnie Tardiff, Plaintiff's therapist, indicated that Plaintiff had difficulty separating "m[y]stical thinking" from reality, which made him "argumentative." (T at 612).[6]

The ALJ concluded that Plaintiff had "no more than mild difficulties" with regard to social functioning.  (T at 20).  This conclusion, which is flatly contradicted by the evidence outlined above, cannot be sustained.  The ALJ primarily relies upon the opinion of non-examining State Agency review consultant Dr. Hochberg, who opined that Plaintiff had only mild limitations with regard to social functioning. (T at 419).  This Court notes that this opinion contained in Dr. Hochberg's report is conclusory and not based upon an actual examination of Plaintiff.  Moreover, this type of report does not, without more, constitute substantial evidence. See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) (noting that State Agency review reports are generally "conclusory, stale, and based on an incomplete medical record,"and do not, without more, "constitute substantial evidence"); see also McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009).

The ALJ also cites selected portions of Dr. Shapiro's consultative examination reports, in which she described Plaintiff's manner of relating and social skills as "adequate." (T at 20). However, the ALJ's analysis of Dr. Shapiro's opinions was flawed.

Dr. Shapiro performed three examinations.  The ALJ afforded "considerable weight"

---

[6]Although the therapist's opinion was rendered several months after the date last insured, it is consistent with evidence from the relevant period.

to Dr. Shapiro's assessment dated July 31, 2007. (T at 23-24).  In that report, Dr. Shapiro concluded that Plaintiff was capable of understanding, following, and performing simple tasks with supervision and independently.  She also opined that Plaintiff could regularly attend to a routine, maintain a schedule, relate to and interact appropriately with others, and deal with stress. (T at 300). In later assessments, Dr. Shapiro indicated that Plaintiff had a marked limitation in terms of interacting appropriately with the public, supervisors, and co-workers (T at 596) and would have difficulty interacting with others, maintaining a work schedule, and dealing with stress. (T at 402, 593).  The ALJ discounted Dr. Shapiro's later reports as being inconsistent with her own observations and improperly based on Plaintiff's subjective complaints.

The ALJ's analysis is flawed in at least four (4) respects.  First, the Second Circuit has held that a patient's complaints or reports of his or her history are "an essential diagnostic tool."  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool.").

Second, the ALJ references Dr. Shapiro's conclusion that Plaintiff lacks motivation and experiences lethargy and then suggests that these characteristics are evidence of malingering distinct from Plaintiff's "mental impairment." (T at 23).  A fair reading of Dr. Shapiro's analysis and the medical record indicates that she considered lack of motivation and lethargy as *symptoms* of Plaintiff's mental impairments, rather than evidence of malingering.  During the first examination, Dr. Shapiro indicated the need to rule out "malingering,"  (T at 301); but this concern does not appear in the subsequent reports. (T at 402, 593).  This indicates that Dr. Shapiro found Plaintiff more credible (and found his

12

symptoms more severe) as she had further opportunities to observe and assess him.

Third, the ALJ suggests that Dr. Shapiro's observations were the same across all three examinations, thereby rendering her subsequent assessments (favoring marked limitations) suspect. This is contrary to the record and simply incorrect. During the first examination, Dr. Shapiro described Plaintiff as "relaxed and comfortable," "very talkative and animated," with fair insight and judgment. (T at 299-300). During the third examination, Dr. Shapiro indicated that Plaintiff was "depressed" and "appeared sad," with poor insight and judgment. (T at 592-93). As noted above, Dr. Shapiro's concern with suspected malingering, expressed in the initial report, was apparently resolved by her subsequent evaluations. (T at 301, 402, 593).

Lastly, Dr. Shapiro's later, more restrictive, assessments are amply supported by the record, which documents serious and sustained symptoms related to Plaintiff's psychological impairments. (T at 337, 484, 08, 511-12, 515-16, 519, 612).

Accordingly, this Court finds that the ALJ erred in discounting Dr. Shapiro's subsequent assessments. Further, the ALJ's conclusion that Plaintiff had no more than mild difficulties in terms of social functioning is not supported by substantial evidence. In fact, the evidence demonstrated a marked limitation with regard to this domain.

### iii.    Concentration, Persistence, or Pace

The domain of maintaining concentration, persistence, or pace, "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C)(3).

In November of 2009, Dr. Shapiro opined that Plaintiff might have difficulty

"completing some tasks given that he complains of memory and concentration deficits." (T at 593). She concluded that Plaintiff might find attending to work or maintaining a schedule "difficult due to lack of motivation and lethargy." (T at 593). Dr. Shapiro also found that Plaintiff did not appropriately manage stress (T at 593) and assessed mild limitations with regard to understanding, remembering, and carrying out simple instructions and making simple work-related decisions. (T at 595). She opined that Plaintiff had marked limitations with regard to understanding, remembering, and carrying out complex instructions. (T at 595).

As noted above, medical records referenced auditory hallucinations, loss of memory, and racing thoughts, which interfered with Plaintiff's concentration. (T at 227, 259, 472, 523). Judith Pirro, a treating social worker, noted memory and concentration problems. (T at 332, 337). Bonnie Tardiff, Plaintiff's therapist, assessed marked limitations with regard to understanding and remembering simple instructions. (T at 611).

The ALJ assessed "no more than moderate" limitations with regard to concentration, persistence, or pace, relying principally upon reports prepared by non-examining State Agency review consultants. (T at 20). The ALJ also selectively cited Dr. Shapiro's consultative examination reports, referencing (for example) her findings with regard to Plaintiff's intellectual functioning (average) and memory skills (intact), while discounting her assessment of concentration deficits and difficulty maintaining a work schedule and responding to stress. (T at 20, 23-24 593). For the reasons stated above, the reports of non-examining consultants, without more, are not substantial evidence and the ALJ's decision to discount Dr. Shapiro's later findings was error. The ALJ also did not address the evidence outlined above documenting the memory and concentration issues caused

14

by Plaintiff's psychiatric symptoms.

For the reasons outlined above, this Court finds that the ALJ's analysis with regard to Listing § 12.03 is not supported by substantial evidence.  In fact, the evidence, including treatment notes and reports from the consultative examiner, demonstrate marked limitations with regard to social functioning and maintaining concentration, persistence, and pace.

### b.    Assessment of Medical Evidence

In his second argument, Plaintiff challenges the ALJ's assessment of Dr. Shapiro's reports.  As discussed *supra*, Dr. Shapiro performed three examinations.  The ALJ afforded "considerable weight" to Dr. Shapiro's first assessment, but discounted the subsequent two. (T at 23-24). For the reasons stated above, this Court finds that the ALJ erred with regard to this aspect of his decision.   Dr. Shapiro appropriately used Plaintiff's subjective complaints as a diagnostic tool, her subsequent assessments were not inconsistent with her observations, and her opinions are supported by the record evidence.  There are sound reasons to conclude that Dr. Shapiro's second and third assessments (which were rendered after she had additional opportunities to observe and evaluate Plaintiff) were more reliable than her initial assessment.  Accordingly, as indicated above, this aspect of the ALJ's decision cannot be sustained.

### c.    Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and

limitations, he or she must be explicit in the reasons for rejecting the testimony. <u>See</u> <u>Brandon v. Bowen</u>, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. <u>See</u> 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." <u>Lewis</u> <u>v. Apfel</u>, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

16

1.    [Plaintiff's] daily activities;
2.    The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.    Precipitating and aggravating factors;
4.    The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.    Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.    Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.    Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff alleges that he is unable to work because of his mental health problems, arthritis, back pain, high blood pressure, obesity, and COPD. (T at 150, 164, 177).  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (T at 22).

The ALJ's credibility assessment is flawed and not supported by substantial evidence as it relates to Plaintiff's mental impairment.  First, the ALJ cited Plaintiff's activities of daily living, which the ALJ found were "not consistent with his complaints of debilitating symptoms." (T at 22).  However, as discussed above, the evidence indicated

17

that Plaintiff's activities of daily living were actually quite limited. (T at 57-58, 303, 336, 593, 600).   Moreover, it is well-settled that the ability to perform basic activities of self-care activities "do not by themselves contradict allegations of disability," as claimants should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Second, the ALJ afforded "considerable weight" to Dr. Shapiro's initial opinion, while discounting her subsequent assessments.  As outlined in detail above, the ALJ's weighing of Dr. Shaprio's opinions was flawed and not supported by substantial evidence.

Third, the ALJ discounted Plaintiff's testimony because "while [Plaintiff] has taken some medications to treat his psychiatric symptoms, he has not consistently pursued other mental health treatment and has refused drug and alcohol counseling." (T at 22).   SSR 96-7p provides, in relevant part, that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

Here, the ALJ's decision does not indicate any consideration of Plaintiff's reasons for not seeking mental health treatment.  Plaintiff testified that he does not have health insurance (T at 47), which certainly provides an explanation for failing to seek treatment.

Moreover, faulting a person with diagnosed mental illnesses (which caused, *inter alia*, delusions, anxiety, depression, poor insight and judgment) for failing to pursue mental health treatment is a "questionable practice." See Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n.6 (E.D.N.Y. Jan. 3, 2008)(noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")(quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.1996) and citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989)).

For the foregoing reasons, this Court finds that the ALJ's credibility assessment concerning Plaintiff's allegations of disabling mental impairments was not rendered in accordance with applicable law and is not supported by substantial evidence.

In contrast, however, this Court is inclined to sustain the ALJ's assessment concerning Plaintiff's physical limitations.  The ALJ's conclusion that Plaintiff retained the residual functional capacity to perform the exertional demands of sedentary work was supported by substantial evidence, including the assessments of two consultative examiners (T at 407, 602) and a State Agency disability analyst. (T at 424-27).   This particular aspect of the ALJ's decision does not need to be disturbed.

### d.    Special Technique

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the

degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).  If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal of the listed impairments.  If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

The ALJ concluded that Plaintiff's schizoaffective disorder was a severe impairment (T at 17-18), but found that it did not meet or medically equal § 12.03 of the Listings.  For the reasons outlined above, this finding was not supported by substantial evidence.  The ALJ further concluded that Plaintiff retained the ability to (on a sustained basis) understand, carry out, and remember simple instructions, to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting. (T at 21).

Even assuming *arguendo* that his Listings analysis was sustainable, the ALJ's mental RFC determination is not supported by substantial evidence. The record evidenced

20

serious mental illness, characterized by social withdrawal, depression, anxiety, paranoid personality disorder, uncontrollable fits of temper, hallucinations, magical thinking, and racing thoughts. (T at 337, 484, 508, 511-12, 515-16, 519). Dr. Shapiro opined that Plaintiff had a marked limitation with respect to interacting appropriately with the public, supervisors, and co-workers. (T at 596).  She further concluded that Plaintiff would have difficulty maintaining a work schedule, and dealing with stress. (T at 402, 593).  As discussed at length above, the ALJ improperly discounted Dr. Shapiro's subsequent assessments, afforded too much weight to non-examining State Agency review consultants, and inappropriately faulted Plaintiff for failing to seek mental health treatment. The record contradicted the ALJ's RFC finding and contained pervasive and persuasive proof that Plaintiff's ability to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting was substantially impaired.

### e.   Consultation with a Vocational Expert

At step 5 in the sequential evaluation, an ALJ is required to perform a two part process to first assess the claimant's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that the claimant could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

21

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

Here, the ALJ found that Plaintiff's non-exertional impairments would have "little to no effect on the occupational base of unskilled sedentary work." (T at 26).  This Court has no hesitancy in concluding that this conclusion was not supported by substantial evidence.

 "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.; SSR 96-9p ("When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.").

Here, the evidence clearly demonstrated that Plaintiff had a substantial loss of his ability to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. (T 337, 402, 484, 508, 511-12, 515-16, 519, 593, 596).  As such, even if the balance of the ALJ's decision was supported by substantial evidence (which it is not), a remand would have been required for consultation with a vocational expert.

**3.    Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision...." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

In the present case, this Court finds persuasive proof of disability for the reasons outlined in detail above, including medical evidence, Plaintiff's testimony, and the opinions rendered by Dr. Shapiro, a consultative examiner.  This Court further concludes that a remand for further evidentiary proceedings would serve no purpose. As such, this Court recommends a remand for calculation of benefits.

## IV. CONCLUSION

23

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   June 1, 2012

Syracuse, New York

## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered  that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 1, 2012

Victor E. Bianchini
United States Magistrate Judge

25